977 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Lloyd WILLIAMS, Defendant-Appellant.
 No. 91-50792.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 9, 1992.*
Decided Oct. 22, 1992.
 
 Before TANG, PREGERSON and ALARCON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Defendant David Lloyd Williams appeals his conviction by jury trial on one count of conspiracy to possess methamphetamine and cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846, one count of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). We have jurisdiction under 28 U.S.C. § 1291 and affirm.
 
 I. BACKGROUND
 
 3
 On February 14, 1991, a vehicle driven by Williams was stopped at the permanent U.S. Border Patrol checkpoint at Temecula, California. The border patrol agent referred the vehicle to a secondary inspection area ("secondary"). The agent at secondary briefly questioned Williams and his passenger Sherry Layton about their citizenship. Williams was very nervous. He avoided eye contact, and his hands were shaking.
 
 
 4
 As the agent bent down to visually inspect the vehicle, he detected an odor of methamphetamine. At the same time, the agent saw two plastic bags containing a white substance on the rear seat. Williams consented to a search of the vehicle. The search revealed that the bags contained one pound of methamphetamine, three ounces of cocaine, and inositol, a cutting agent for both methamphetamine and cocaine. From the time Williams pulled into secondary until when he was arrested, approximately one minute had passed.
 
 
 5
 At Williams's trial, the government called Sherry Layton as a witness. After answering some preliminary questions, Layton invoked her right against self-incrimination under the Fifth Amendment. At sidebar, out of the jury's hearing, the government offered Layton immunity. The court then told the jury that Layton had a privilege against self-incrimination, but that she could be compelled to testify if immunity were offered.
 
 
 6
 After a short recess, the court asked the government, in the presence of the jury, whether it had offered Layton immunity. The government responded that it had. The court then explained immunity to the jury. Williams entered a general objection "to all the proceedings that have taken place in the jury's presence regarding the Fifth Amendment...."
 
 
 7
 During direct examination, the government mentioned Layton's plea agreement with the government. On cross-examination, Williams attacked Layton's credibility by suggesting that her plea agreement motivated her to lie. During redirect, the government asked Layton whether under her plea agreement she had an obligation to testify truthfully. Layton responded that she did.
 
 
 8
 On appeal, Williams contends that the district court erred by denying his motion for a new trial based on prosecutorial misconduct. Williams also contends that the district court erred when it denied his motion to suppress evidence of the narcotics.
 
 II. PROSECUTORIAL MISCONDUCT
 
 9
 Williams argues that the district court erred by denying his motion for a new trial based on prosecutorial misconduct. Specifically, Williams contends that the government vouched for Layton's credibility by: 1) granting Layton immunity in the presence of the jury; 2) mentioning Layton's plea agreement during direct examination; and 3) referring to Layton's obligation to testify truthfully under the agreement during redirect examination. We review for abuse of discretion the district court's decision. United States v. Powell, 932 F.2d 1337, 1340 (9th Cir.1991).
 
 
 10
 Impermissible prosecutorial vouching may occur when a prosecutor places the government's prestige behind a witness through personal assurances of the witness's veracity. It may also occur either when a prosecutor suggests that information not before the jury supports a witness's testimony, or when a prosecutor implies that the government has taken steps to assure the veracity of a witness. United States v. Simtob, 901 F.2d 799, 805 (1990).
 
 
 11
 Contrary to Williams's arguments, the prosecutor did not vouch for Layton by telling the jury that she had been granted immunity. Juries are routinely advised that immunity has been granted for a witness's testimony. McGuire v. Estelle, 112 S.Ct. 475, 479 (1991); United States v. Vaccaro, 816 F.2d 443, 455 (9th Cir.1987).
 
 
 12
 Williams argues that his case is analogous to United States v. Simtob, 901 F.2d 799 (9th Cir.1990). We disagree. In Simtob, a witness was granted immunity after his credibility was attacked on cross-examination. By contrast, Layton was granted immunity before she answered any questions about facts supporting the charges against Williams. Furthermore, Williams has not alleged that the prosecutor deliberately attempted to manipulate the jury by knowingly calling a witness who would invoke the Fifth Amendment. Cf. United States v. Namet, 373 U.S. 179, 186 (1963) (knowing that witness will invoke the Fifth Amendment yet asking questions that incriminate witness and defendant constitutes prosecutorial misconduct where adverse inference of defendant's guilt results).
 
 
 13
 Second, the prosecutor did not vouch for Layton by mentioning her plea agreement on direct examination. The prosecutor merely stated that in return for Ms. Layton's plea of guilty, the government would recommend a light sentence. No mention was made of Layton's obligation to testify truthfully under the agreement. Cf. United States v. Shaw, 829 F.2d 714, 717 (1987) (prosecutor vouched for witness during opening statement by referring to witness's obligation to testify truthfully under plea agreement). Additionally, the prosecutor did not suggest that the plea bargain assured Layton's veracity.
 
 
 14
 Williams's contention concerning the prosecutor's reference to the plea agreement on redirect is similarly unavailing. A reference to the "truthful testimony" provisions of a witness's plea agreement does not constitute vouching if made in response to an attack on the witness's credibility because of the plea agreement. United States v. Monroe, 943 F.2d 1007, 1013 (9th Cir.1991).
 
 III. WILLIAMS'S DETENTION AT SECONDARY
 
 15
 Williams argues that the district court erred when it denied his motion to suppress evidence of the narcotics found in the vehicle. He contends that once he and Layton told the border patrol agent that they were United States citizens, the agent had no reasonable suspicion of criminal activity. Consequently, Williams claims that the border patrol's visual inspection of the car violated the Fourth Amendment. We review de novo the legal issues involved in a trial court's ruling on a motion to suppress. United States v. Morales, No. 91-50513, slip op. 9725, 9729 (9th Cir. Aug. 12, 1992).
 
 
 16
 A stop at a permanent immigration checkpoint is permissible under the Fourth Amendment so long as the detention is limited to a few brief questions about immigration, production of immigration documents, and a visual inspection of the vehicle limited to what can be seen without a search. United States v. Preciado-Robles, 964 F.2d 882, 884 (9th Cir.1992). Such a stop does not require individualized suspicion that a vehicle contains illegal aliens. United States v. Martinez-Fuerte, 428 U.S. 543, 562 (1976).
 
 
 17
 Williams's referral to secondary was permissible even if the referring agent did not have an individualized suspicion that the appellant's car contained illegal aliens. See Martinez-Fuerte, 428 U.S. at 562-63. Once at secondary, the agent limited his immigration investigation to brief immigration questioning and a visual inspection of the vehicle. Consequently, the secondary agent's discovery of the methamphetamine odor and plastic bags did not violate the Fourth Amendment because it occurred during a permissible immigration inspection. Williams has not challenged the validity of his consent to the subsequent search of the vehicle.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel unanimously found United States of America v. David Lloyd Williams suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3